UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ARMANDO ZERTUCHE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. M-07-31 |
| | § | |
| GREAT LAKES DREDGE & DOCK COMPANY, LLC, | § | |
| | § | |
| Defendant. | § | |

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND

Now before the Court for consideration is Plaintiff Armando Zertuche's ("Plaintiff") Motion to Remand. (Doc. 6). After considering Plaintiff's motion and reply, and Defendant Great Lakes Dredge & Dock Company, LLC's ("Defendant") response, the Court DENIES Plaintiff's Motion to Remand (Docs. 6, 11, 13).

### I. Background

On January 9, 2007, Plaintiff filed suit against Defendant in the 381st Judicial District of Starr County, Texas alleging that as a Jones Act seaman he sustained personal injuries while working on the Dredge *Pontchartrain*. (Doc. 1 at 2). Plaintiff claims that in April 2006 while "untying a boat from the Dredge Pontchartrain, the boatman suddenly pulled the boat back, causing Plaintiff to fall onto his back. The incident happened on water."[1] (Doc. 13, attach. 1). Plaintiff also asserts claims of negligence and failure to provide benefits of maintenance and cure, and seeks damages in the amount of $2,500,000.00. *Id.* On February 20, 2007, Defendant filed its notice of removal and removed this case based on diversity jurisdiction. (Doc. 1). The Court will review Plaintiff's motion below.

### II. Analysis

In general, cases under the Jones Act, 46 U.S.C. app. § 688, are not removable from state court. *Holmes v. Atl. Sounding Col.*, 437 F.3d 441, 445 (5th Cir. 2006). However, a fraudulently

---

[1] Additionally, Plaintiff claims that he tried to file an incident report but was prevented from doing so by his Second

pleaded Jones Act claim does not bar removal by a defendant. *Id*. In order to show that a Jones Act claim has been fraudulently plead, a defendant may pierce the pleadings, and the district court may use a "summary judgment-like procedure" to determine whether the claim has been fraudulently pleaded. *Id*. The district court must review all disputed facts and ambiguities in the plaintiff's favor. *Id*. It may then deny remand after determining that the plaintiff has no possibility of establishing a Jones Act claim on the merits. *Id*.

To determine whether a plaintiff qualifies as a Jones Act seaman, the plaintiff must: (1) demonstrate that his duties contribute to the function of the vessel or to the accomplishment of its mission; and (2) that he has a connection to a vessel in navigation that is substantial in terms of both its duration and nature. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 359 (1995). The first prong of the *Chandris*/seaman analysis is "very broad" and "the claimant need only show that he does the ship's work." *Endeavor Marine v. Crane Operators, Inc.*, 234 F.3d 287, 290 (5th Cir. 2000) (*quoting Chandris*, 515 U.S. at 368). However, the second prong of the analysis "is intended to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation." *Id*. The *Chandris* Court further noted that:

> The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.

*Chandris*, 515 U.S. at 368. Moreover,

> the duration of the worker's connection to a vessel and the nature of the worker's activities taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

*Id*. at 370.

In support of his Motion to Remand, Plaintiff argues that remand is proper because (1) "[Plaintiff] was a Jones Act seaman at the time of his injuries; and (2) [b]ecause this is a proper Jones Act claim, it cannot be removed based on diversity of citizenship." (Doc. 6 at 2).

---

Captain, Bernardo Garza. (Doc. 13, attach. 1).

However, Defendant claims that because "[Plaintiff] served as a Dump Foreman and cannot establish a substantial [or permanent] connection to a vessel in navigation, he cannot qualify as a seaman under the Jones Act." (Doc. 11 at 1).  Thus, Defendant asserts that Plaintiff has "fraudulently pled a Jones Act claim, which renders his claims removable [to federal court]."[2] *Id*.

In sum, the central issue is whether Plaintiff's status as a temporarily assigned deckhand on a dredge establishes the second prong of the seaman analysis—that he has a connection to a vessel in navigation that is substantial in terms of both its duration and nature.  Nevertheless, the Court will review both prongs of the *Chandris*/seaman analysis below.

1. **Did Plaintiff's Duties Contribute to the Function of the Vessel or to the Accomplishment of its Mission?**

In *Nunez v. B&B Dredging, Inc.*, 288 F. 3d 271 (5th Cir. 2002), the Fifth Circuit held that the plaintiff, a Dump Foreman, contributed to the function and mission of a vessel. *Nunez*, 288 F. 3d at 275.  It further stated that "an essential function of a dredge is to remove soil and silt from the seabed of the waterway where the dredge is working. That spoil must be disposed of in an orderly fashion on the shore for the dredge to perform its function." *Id*.  The Circuit concluded that the plaintiff's job as a Dump Foreman satisfied the first prong of the seaman status test. *Id*. Similarly in this case, it follows that Plaintiff's initial assignment as a Dump Foreman establishes the first part of the seaman test.[3]

2. **Does Plaintiff have a Connection to a Vessel in Navigation that is Substantial in terms of both its Duration and Nature?**

Both Plaintiff and Defendant submit evidence in the form of affidavits regarding Plaintiff's employment status during the incident at hand.  Defendant alleges that the Dredge *Pontchartrain* was in the Baptiste Collete bar channel in a dredging project in Plaquemine Parish, Venice Lousiana from January through April 2006. (Doc. 11 at 1). Plaintiff concedes that he was originally assigned to this project and worked at the dump site as a Dump Foreman.

---

[2] Pursuant to 28 U.S.C. § 1332, a federal court has jurisdiction over a civil action where the amount in controversy exceeds $75,000, exclusive of interests and costs, and the action is between parties of different states.  It is undisputed that Plaintiff resides in Starr County, Texas and that Defendant is a corporation organized under the laws of Delaware. (Doc. 1 at 3).  Thus, Plaintiff and Defendant are diverse.  Additionally, it is clear from Plaintiff's Original Petition that he seeks damages in the amount of 2,500,000.00, an amount well over this Court's amount in controversy requirement.

[3] Although it is contested whether Plaintiff was considered a Deckhand or Dump Foreman at the time of injury, the Court finds that Plaintiff's initial position as Dump Foreman is sufficient for purposes of satisfying the first prong of the seaman analysis.

However, according to the affidavits of Plaintiff and Daniel Toscano, a Mate for the Defendant, "the dump [site] was closed in late February and all dump personnel were sent to work on another job." (Doc. 6, Exh. B).  As a result, Plaintiff allegedly served as a deckhand for the Dredge *Pontchartrain* for the months of March and April 2006, "perform[ing] 'deckhand' work such as: connect[ing] and separat[ing] pontoon pipes, separat[ing] pumps, mak[ing] cables for the anchors, wash[ing] and paint[ing] the dredge, work[ing] on the crane barge, work[ing] on the tender boats, and set[ting], mov[ing] and retriev[ing] anchors." *Id*.  Plaintiff claims that he worked as a deckhand for approximately eight (8) weeks. (Doc. 6, Exh. A). Moreover, he states that "over fifty percent of the time of [his] employment with [Defendant] [he] worked as a deckhand."[4] *Id*.  According to the affidavit of Dredge Captain Mike Latiolais, Plaintiff's assignment "to the dredge and [its] floating equipment" was temporary, and Plaintiff still received the same salary as a Dump Foreman.[5] (Doc. 11, Exh. 1 at 2).  Latiolais concludes that Plaintiff's "duties while employed by [Defendant] were primarily those of a shore-based employee involving shore-based responsibilities and duties."[6] *Id*.

The Court agrees with Defendant that Plaintiff's assignment was "sporadic and/or transitory," and that *Becker v. Tidewater*, 335 F.3d 376, 391 (5th Cir. 2003) provides guidance to this case.  In *Becker*, the plaintiff initially served as an engineer intern primarily assigned to land-based work, but was then assigned to work as a crew member on a technology vessel.[7] *Becker*, 335 F.3d at 382.  It was during his time on the vessel that he was severely injured.  The Fifth Circuit held that the plaintiff was not a seaman and that his status did not "fundamentally change" when he was assigned to the vessel. *Id*. at 390.  It further reasoned that his assignment was an "opportunity presented to him during the course of the internship."[8] *Id*.  Similarly, in this case, Plaintiff admits that he was hired as a Dump Foreman, and that it was only because the

---

[4] Plaintiff also states that he worked for Defendant for three years. *Id*. However, it remains unclear what other positions Plaintiff maintained during those three years or if whether Plaintiff worked as a deckhand or as a Dump Foreman.

[5] Defendant states that although Plaintiff was temporarily assigned, he was still paid at the Dump Foreman rate of $15.00 per hour instead of a deckhand's rate of $12.00. (Doc. 11 at 2).

[6] Plaintiff provides the deposition excerpt of Mike Latiolais from another trial to illustrate that when dump laborers/field laborers are reassigned to deckhand positions, they are classified as deckhands.  However, Plaintiff was a Dump Foreman and not a dump laborer.  Additionally, there is no other evidence to suggest that this was the situation that occurred in this case or that Plaintiff was specifically classified as a deckhand.

[7] The main issue on appeal in Becker was "whether the district court erred in assigning plaintiff seaman status under the Jones Act." *Becker*, 335 F.3d at 385.

[8] The Court in *Becker* also found that it was the Defendant's overall plan to expose him to the sea if the opportunity presented itself. *Id*. at 390.

dump closed, that he was reassigned to the Dredge. Defendant states that "instead of laying [Plaintiff] off, Great Lakes kept [him] on the job and temporarily assigned him." (Doc. 11 at 2). Moreover, Plaintiff continued to be paid at his current Dump Foreman rate, which was higher than regularly employed deckhands, providing further evidence that Plaintiff's employment status had not permanently changed. Certainly, Defendant had no incentive to continue to pay Plaintiff at a higher rate considering his new work duties.

Plaintiff argues that at the time of his injury, his duties as a deckhand provide proof of his seaman status and his connection to a vessel in navigation. However, the Circuit in *Becker* suggests otherwise, stating that "[s]eaman status does not attach to a worker simply because he is necessary to the vessel's mission at the time of injury." *Id*. at 391 (citing *Chandris*, 515 U.S. at 358). "Chandris holds that temporary workers are not seaman, although such workers may be treated as regular crew members by their peers." *Id*. In light of Plaintiff's initial assignment as a Dump Foreman, the opportunity to work as a deckhand, the temporary status of his work as a deckhand, and the pay he received while working as a deckhand, Plaintiff's status during the time of injury "does not constitute the kind of regular or continuous commitment of his labor to the service of [the dredge] that regularly exposed him to the perils of the sea within the meaning of *Chandris*. *Id*.

Therefore, the Court determines that Plaintiff has no possibility of establishing a Jones Act claim, and finds that federal diversity jurisdiction exists. Thus, Plaintiff's motion to remand is denied.

### III. Conclusion

For the foregoing reasons, Plaintiffs' Motion to Remand is DENIED.

SO ORDERED this 30th day of August, 2007, at McAllen, Texas.

*[Signature: Randy Crane]*
Randy Crane
United States District Judge